Our next case this morning is Brotherhood of Locomotive Engineers v. Union Pacific Railroad. All right, I see, um, Pearson. So we have everyone and you may proceed, Mr. Pearson. Can you hear me? I can, Your Honor. I had a little delay and it's pursuing for the record. Okay. Oh, thank you, Mr. Pearson. You may proceed. In this case under the Railway Labor Act Section 2, there's three unique facts. There's no contract in the record. There's no management rights clause. And there's no waiver of the right to demand bargaining. This makes this a really unique case. And if we look at three Seventh Circuit precedents, it should be clear that this is a major dispute. I'm sorry if I'm a little slow, Your Honor. Somehow with my system, I'm getting feedback. I'm going to take a second to turn my speakers off, if that, or turn them down at least. Can you still hear me, Your Honor? Yeah. Thank you. In 2017, the parties or at least one of my clients and Union Pacific were in front of this court challenging the creation by Union Pacific of new discipline rules. Now, what the key finding in that case was, this is a BLETVUP from 2017, what I call the maps case in my briefs. The key finding in that case was that there was an implied in fact term of an existing contract. What distinguishes this case is that there's no contract. Literally, I spent last night pouring through the record. It's not that big of a record, so it didn't take me too long. There's not a single contract in the record before this court. You don't need one, right? I mean, isn't the law clear that you don't need to be able to point specifically to a contract that a pattern and practice can reflect an agreement based upon the course of at least twice? Judge Scudder, I really disagree strongly. If you want to direct me to the Supreme Court cases, I'll answer your question. How do you distinguish Conrail? Conrail is a factual distinction. Rule G is what was involved in Conrail, if I'm thinking of the correct part of the case. In Conrail, it was undisputed that Rule G was a part of the party's contract. That's right there in the record. It says that the parties do not dispute that Rule G is part of the contract. So there, Rule G could be an implied in fact term of the contract. And if you look at another case on that exact issue, it's out of the Fifth Circuit. It's the International Brotherhood of Teamsters Local 19B Southwest Airlines 875F2-1129. This case, originally the three-judge panel of the Fifth Circuit enjoined the change as a major dispute. And on Bonk, the only reason that the injunction was reversed was that there was an express management rights clause. And it was the interpretation of the management rights clause that the past practice could allow as an interpretive aid for the court to find that an arbitrator could offer a contract interpretation that allowed them to make the change. So the distinction of Conrail is that we don't admit that there's any term of the contract. There's no Rule G here, Your Honor. And continuing with that, the importance of the management rights clause in the Southwest Airlines case, Union Pacific has no management rights clause for an arbitrator to interpret. They won't contest that. There's not a single management rights clause in any contract that Union Pacific has with my clients. And in looking at past practice, it's true that there's cases that talk about past practice pouring part of the status quo of the working conditions. But if you look at black letter law and circuit precedent, including under the Railway Labor Act, past practice can only act as an interpretive aid as kind of parole evidence to interpret an ambiguity in an existing contract. This is why I started off talking about the 2017 MAPS case, because there the court was very implied in fact contract arising from past practice. There was only an implied in fact term of the party's existing contract. Now here on the record before the court, it is impossible to do that same dance because there is not a single contract in the record, not a single contract. And if Your Honors feel that there's any question on that, please let me know. But I've reviewed the record. I've briefed it. There's no contract in the record here. That's key distinction of this case that builds upon the 2017 case. Mr. Pursoon, how does the Railway Labor Executives case from 1987 from this court, how does that not control here? How do you, if you do, attempt to distinguish that case from these circumstances? Which passage in that case? I'm not sure which passage you're looking at, Judge Scudder. It's Judge Brennan. It's the minor dispute. I'm sorry, Judge Brennan. It's the minor dispute circumstance that based upon the previous arrangement between the parties, this is the type of issue that becomes a minor dispute and is reserved for arbitration rather than a potential for strike. Well, one of the ways I would distinguish that is looking to this court's 2002 case in Anheuser-Busch, the local unit 744 IVT, which relies in part on the Judson Rubberworks case that I cited in my brief, which says that an award cannot be enforced when, quote, it draws its essence solely from the party's past practice. And this is the 2002 case by the Seventh Circuit. What's key there is getting back to the core point of my argument. Past practice itself does not imply contracts. It can imply a term to a contract. But an award, remember, an arbitrator's job is to enforce contracts. This comes from the Seventh Circuit's 1990 case, Chicago Northwestern Transportation v. RLEA. Quote, the task of arbitrators under the Railway Labor Act, the task for that matter of almost all if there's no dispute over the meaning of a contract, there's nothing for them to do. Let's say that you uphold the district court and say it's a minor dispute. I don't know what contract I'm putting to the arbitrator to interpret. And if the arbitrator isn't interpreting a contract, they are just de facto exceeding their lawful authority. All an arbitrator can do is interpret a contract. An arbitrator exceeds their authority when they make contracts. And if Union Pacific is coming to an arbitrator or to this court and saying, based on past practice alone, not interpreting any contract, we have the right to unilaterally change working conditions, which is a mandatory subject of bargaining under Section 2 of the Railway Labor Act, that's just wrong. And I don't know if that answers your question, Judge Bernie. Thank you for your response. So I want to save some time for rebuttals, so I'll stop there unless there's a pending question. That's fine. Mr. Rolfes. Thank you. Good morning. My name is Andrew Rolfes. I represent Union Pacific Railroad Company. The district court's decision in this case involved a straightforward application of settled legal principles, and it should be summarily affirmed. The Supreme Court and practices under a collective bargaining agreement may become an implied term of that agreement, and that disputes over the scope of a railroad's authority to act in accordance with such an implied term are minor disputes subject to the exclusive jurisdiction of the National Railroad Adjustment Board. The only limitation on that is that the railroad's position has to be at least arguable and not frivolous. The district court simply followed that well-established precedent. The union's contention that there's no agreement or no contract at issue here is untrue. It defies comprehension, frankly. It's undisputed that Union Pacific and the unions are parties, as this court held in the previous discipline case, multiple overlapping collective bargaining agreements. And we submitted a declaration from Brandt-Hanquist that described there are multiple collective bargaining agreements with these unions. And the Conrail case makes clear that a collective bargaining agreement covers the whole employment relationship. So it's just simply not true that there's no contract to interpret. The contract to interpret here is the collective bargaining agreements and whether those agreements include an implied term that has been established by the party's practice under those agreements. It's well-established both in Conrail and in this court's prior precedent that past practices can become normative and become an implied term of the party's agreement. Mr. Pursoon was talking about the Chicago and Northwestern versus RLEA case in which there is nothing for the arbitrator to interpret. Well, in that decision, Judge Posner also said this, when practices are normative, when they create implied obligations under the collective bargaining agreements, their interpretation falls under the sway of Section 3-2. That's referring to Section 3 of the Broadway Labor Act. For there is no general requirement that a collective bargaining agreement as distinct from agreements concerning dues and pension rights be in writing. This court also said in Brotherhood of Maintenance of Way Employees Division versus Norfolk Southern 2014, an employer's contractual claim may rely upon implied contractual terms which the party's established through past practices. The site for that is 745 F. 3rd at 813. So in this case, the court below, the district court, relied on an over 20-year practice whereby Union Pacific had at first implemented and then modified its attendance policy and found that that practice, which the unions admit in their brief they have previously acquiesced in, was sufficient to support an arguable basis for Union Pacific's position. The union's argument that you can't look at past practice unless you can also identify a specific collective bargaining agreement and specific language that is somehow ambiguous is simply not supported by any of the cases that have been decided under the Railway Act and discussed in the briefs. In particular, look at the Conrail decision from the Supreme Court. In Conrail, the party's collective bargaining agreement was not part of the record. What was the agreement? And it had nothing to do with Rule G. Rule G was not the party's implied agreement. Rule G was a unilaterally implemented industry-wide rule that prohibits drug use while on duty. What was at issue in Conrail was not Rule G. It was the scope of Conrail's authority to act in accordance with its practice of conducting medical examinations. As the court notes in its opinion, from its inception in 1976 until it issued the disputed rule in 1987, Conrail had set the terms for conducting medical examinations of employees, return-to-work physicals, periodic fitness-for-duty physicals. In 1987, and the unions had acquiesced in that policy, that's what was undisputed. And that's why it was indisputable that an implied term of the party's agreement allowed Conrail some discretion in determining what it tested for. So in 1987, when Conrail implemented its drug testing rule, which is the same rule that was at issue in the RLEA versus Norfolk and Western case decided by this court, when Conrail instituted that, the unions threw the flag and said, wait a minute, that's a different, that's a completely different type of test that you're conducting, and you're doing it for different purposes. So we're not acquiescing in that. But the Supreme Court said, well, okay, but there doesn't need to be a specific agreement on the things that the union was objecting to. Like, what about confidentiality? What about the disciplinary aspects of this? The Supreme Court said, that's all part of an argument you can present to the arbitrator about whether or not Conrail's determination of the scope of its discretion goes as far as it says it does. That's the same issue here. Whether or not Union Pacific's discretion to implement changes to its attendance policy extends to the points-based policy that the union objects to in this case is an issue for the arbitrator to decide. All that this court needs to do and all that the district court needed to do was determine whether we have at least an arguable basis for our position that the party's past practice has implied a term, giving Union Pacific some discretion to set and enforce reasonable attendance policies. The argument that past practice can only be used to address ambiguity that the unions rely on in their brief relies principally on a Sixth Circuit decision that was then distinguished by this court's decision in the RLEA versus Norfolk and Weston case where it said that that case stands for the unremarkable proposition that past practice cannot be used to contradict the plain terms of a collective bargaining agreement. But the court then went on to decide that past practice did support the railroad's argument that its practice of conducting medical examinations allowed it to institute drug testing as part of those examinations. Mr. Rolfes, did your adversary argue in the district court that it's subject to no agreement whatsoever? Yes, your honor. And the court in its decision below rejected that argument. Yeah, it because there are multiple agreements, right, that between the union and the company. Yes, there are multiple agreement and implied term of those agreements allows the carrier discretion to set and enforce attendance. So my question is, is there any factual dispute or was there one presented to the district court that there are multiple agreements between the union and the company? Yes, your honor. That was part of the declaration that was submitted from Grant Hanquist who described the party's collective bargaining relationship and then the practice there under of making of instituting and then making changes to the attendance. Right, that's what you submitted, right? Or your client submitted? Yes, your honor. Okay, was did your adversary, did Mr. Pursoon set forth evidence showing that that's false? Well, no. He submitted declarations from multiple general chairmen saying that we bargain about things all the time and we've never bargained away our right to protest your institution of attendance standards. But the union's position on that practice has been to admit that it's occurred. And in fact, they've acquiesced in most of it and when they've challenged it, they've gone to arbitration and lost. So that's in their briefs. These are the, what you're referring to there are the seven prior instances between 1999 and 2018 that there have been changes made by the company to the attendance policy. That's correct, your honor. There have been multiple changes to the attendance policy over the course of more than 20 years. And under the case law, under the RLA, that's more than enough to say that our position is arguably justified. And that's all we need to decide. This doesn't decide the merits of that position. The merits of that position get decided in arbitration and the cases say that over and over and over again. So with that, your honor, I see my time's running short, but the only further point I would like to make is that the union's position in this case really makes the courts the forum of first resort when there are questions about the impact of past practice under the party's collective bargaining agreements. And that turns the RLA scheme on its head. The courts are supposed to be the forum of last resort and these types of disputes belong in arbitration before the National Railroad Adjustment Board or a panel that's created by the parties. Thank you. Thank you. Mr. Pursoon. Mr. Pursoon, you're still on mute. Thank you, Judge Sykes. Can you hear me now? Yes. Thank you, Judge Sykes. Judge Scudder, it's undisputed for the record that parties have multiple collective bargaining agreements. It's also, I believe, undisputed that there are no collective bargaining agreements in the record and that Union Pacific has not identified which particular collective bargaining agreement. See, that's the part of this that I think you have a hard time with. I don't know how you distinguish the reasoning, the legal reasoning that underpins the U.S. Supreme Court's decision in Conrail. And it's not sufficient, in my view, for you to say that involves drug screening or physical examinations of employees and this involves an attendance policy. The U.S. Supreme Court set forth an entire legal framework and I don't know at all how you begin to distinguish that. It's not that one is involving drug screening and one is involving attendance. It's that the parties agreed in Conrail that there was a contract provision that related to drug screening and then it was at least an arguable question about whether, based on everything that happened with the practice, the railroad could change how it did that drug screening. Here, there's no contract provision relating to attendance. That's the distinction I would make, Your Honor. And what I would point out is that this case presents an opportunity, and whatever opinion you write, I want you to really think about the implications of how this will be absorbed by the broader labor community. You know, Judge Sykes, I read your case by United Airlines versus Airline Pilots Association in 2009, where you enforced the heart of the Railway Labor Act, as the Supreme Court described in the Jacksonville Terminal case, enforced that duty to make and maintain agreements. And that's all we're asking Union Pacific to do, is to come and bargain and make an agreement. We're not looking to strike or do anything. And if you look at the body of case law under labor relations, it would be a very disturbing decision that, frankly, the labor unions would run with to come out and say that without reference to a specific contract, you can use naked past practice to create enforceable contract rights that would bind the hands of either labor or other unions. All right, thank you very much. Our thanks to both counsel, and the case is taken under advisement.